ENTERED

NOV 18 1994

ORDER BOOK
NO. _128_ PAGE _80_

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

VICTOR A. COOPER,

    Plaintiff,

v.                                    Civil Action No. 5:94-0298

NORFOLK AND WESTERN RAILWAY COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court via Defendant Norfolk and Western Railway Company's Motion for Summary Judgment, Memorandum in Support of Defendant Norfolk and Western Railway Company's Motion for Summary Judgment, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, and Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. Having carefully reviewed said motions and all memoranda and exhibits submitted in regard thereto, the Court is now prepared to render its decision.

### I. Background

### A. Facts

Plaintiff in this case, Victor A. Cooper, is a hostler[1] for Defendant Norfolk and Western Railway Company (also known as "Norfolk and Southern Railway") at its Mullens, West Virginia shop. He has worked for his present employer since 1972 when he was hired as a laborer. He was promoted to the position of hostler in 1978.

---

[1] A hostler's duties include moving train engines around while they are in the station, and moving them back and forth between two stations as they are needed. The position is superior to that of a laborer.

In 1987 W.B. Clemson, Jr. became the senior general foreman for Defendant employer at Mullens and at that time he began to require Plaintiff, a hostler, to perform laborer duties.[2] In 1989 Plaintiff filed a complaint with the West Virginia Human Rights Commission (WVHRC) alleging racial discrimination by his employer.

This is an employment discrimination case brought under the West Virginia Human Rights Act (WVHRA). During the time covered in his complaint Plaintiff was the only African-American in the position of hostler at the Mullens Shop. (Deposition of Victor A. Cooper (Cooper Depo.) p. 47.)[3] He contends that Mr. Clemson and others at Mr. Clemson's direction required him to perform laborer duties, particularly "dirty" duties such as cleaning out engines and air compressors, when another white hostler was not required to do these tasks and while white laborers sat by and rested, for the simple reason that Plaintiff is an African-American. (Cooper Depo. pp. 8-13.)

Plaintiff also claims he was denied job opportunities and was subjected to a hostile work environment on account of his race, and

---

[2] In this action Plaintiff does not contest that Mr. Clemson was permitted to require hostlers to perform laborer duties under the applicable contract. Plaintiff believed he should not have had to perform laborer duties under his contract and submitted time slips requesting compensation for the work he believed he was not required to do. Plaintiff's union filed grievances to this effect which were ultimately found in Defendant's favor.

Whether or not a hostler could be made to perform laborer duties is a separate issue from whether Plaintiff was required more frequently to perform dirtier laborer duties than his white counterpart and required to perform these duties while white laborers sat by. This latter issue formed much of the substance of Plaintiff's West Virginia Human Rights Commission (WVHRC) claim.

[3] All documents cited in this Opinion were attached as exhibits either to Defendant's Motion for Summary Judgment or to Plaintiff's Response in Opposition to Defendant's Motion.

that he was discharged and kept out of work for a period of fifteen months before he was allowed to return, all because of his race and/or in retaliation for his filing a complaint about his employer with the WVHRC. A Public Law Board ordered him returned to service in December of 1991[4], and he was required to pass a return-to-work physical examination. After passing his physical examination, Plaintiff was then sent for a psychiatric examination. Plaintiff was out of work, without pay, as a result of a psychiatric disqualification from February 26, 1992 until March of 1993. Plaintiff feels the psychiatric disqualification was improper and that he was kept from work for racially discriminatory reasons and in retaliation for filing a complaint about Defendant employer with the WVHRC in 1989.

At the time Plaintiff was hired in 1972 as a laborer, Defendant employer maintained segregated locker facilities for African-American and white employees. (Cooper Depo. p. 41.) This practice of maintaining segregated facilities was not abolished until 1979. (Cooper Depo. p. 42.)

From the time of his hiring in 1972 until sometime in the past two years (in other words, in the time since Plaintiff filed his present complaint) Defendant employer's Mullens shop displayed a sign left over from Jim Crow[5] days. (Cooper Depo. p. 40.) This sign

---

[4] This action was taken pursuant to a contract grievance procedure invoked by Plaintiff's union.

[5] The term "Jim Crow" refers to "the systematic practice of discriminating against and suppressing black people." Webster's II New Riverside University Dictionary 1988.

3

featured the word "COLORED" in white letters on a black steel beam. (Cooper Depo. p. 38.) The sign's historic purpose was reportedly to indicate the location of a water bucket for the use of African-American railroad employees. (Cooper Depo. p. 40.)[6]

After working in this environment for 19 years and filing a complaint with the WVHRC, on September 5, 1991 Plaintiff had a disagreement with T.A. Salango, a white Mechanical Supervisor for Norfolk and Western Railway Company, over whether Plaintiff's attendance at an ergonomics seminar was mandatory. (Cooper Depo. pp. 58-60, Affidavit of T.A. Salango (Salango Aff.) pp. 2-4.) Plaintiff, believing it was not, refused to attend. (Cooper Depo. pp. 58-60). Mr. Salango apparently became angry and threatening to Plaintiff[7] at which point Plaintiff responded by picking up a stick to defend himself. (Cooper Depo. pp. 62-64, Salango Aff. p. 3.) Mr. Salango ordered Plaintiff to leave the premises, but Plaintiff

---

[6] Defendant employer appears to dispute the purpose of said sign, maintaining, without proof or even opinion testimony, that the sign in question may have been "in reference to some electrical wires in the vicinity." (Defendant's Memorandum in Support of Defendant Norfolk and Western Railway Company's Motion for Summary Judgment (Defendant's Memo in Support) p. 2.) The Court is tempted to question the sincerity of Defendant employer's position with respect to the purpose of this sign. Suffice it to say that a dispute, however genuine it may be, exists between the parties over the purpose of this sign, which is, in the Court's opinion, a material fact tending to show a racially discriminatory work environment.

[7] This is a matter in dispute. It is the Defendant's position that Plaintiff was "wild-eyed" and "threatening," but Plaintiff's testimony is that Salango appeared drunk or on drugs, knocked a book out Plaintiff's hand, grabbed him by the shirt and appeared ready to hit Plaintiff. (Cooper Depo. pp. 62-66, Salango Aff. p. 4.) Plaintiff says he grabbed a nearby broom handle to defend himself. (Cooper Depo. p. 69.)

4

refused without a written order or a witness, fearing that he would be cited for leaving his job without permission. (Cooper Depo. pp. 63-64.)  At Plaintiff's suggestion, Plaintiff was escorted from the premises by the local Mullens police when said police arrived at the job site to serve as witnesses to Plaintiff's discharge. (Cooper Depo. pp. 64-65, Salango Aff. p. 4.)

Despite his nineteen year record of good service with Defendant employer, subsequent to and ostensibly as a result of the September 5, 1991 incident, Plaintiff was permanently discharged from his job in late September of 1991, after a hearing conducted according to the requirements of Plaintiff's contract. A Public Law Board ordered Plaintiff reinstated in December of 1991, but he was required to undergo first a medical and then a psychiatric evaluation before returning to work. Plaintiff claims he was led by his employer to believe that a psychiatric evaluation was to be a routine physical examination.[8]  (Cooper Depo. p. 85.)  This psychiatric evaluation conducted by Defendant's paid psychiatrist produced findings of a psychiatric disorder and a diagnosis due to the fact that Plaintiff believed he was discriminated against on

_____

[8] Plaintiff was told he would have to pass a medical exam before returning to work. When Plaintiff passed the physical examination, he was then sent for a another "medical" exam which he found out upon arriving at the physician's office was a psychiatric exam, arranged and paid for by Defendant employer. Plaintiff "failed" this psychiatric exam for reasons set out in an evaluation written by Dr. Andrew Bockner.

the basis of his race.[9] (Initial Evaluation by Dr. Andrew C. Bockner (Bockner Eval.) pp. 2-4.) Consequently, Defendant was kept from returning to work for fifteen months until he obtained an independent psychiatric evaluation, which found no psychiatric disorder. (Psychiatric and Psychological Evaluation by Dr. Elma Z. Bernardo (Bernardo Eval.) pp. 2 and 5.)

As a result of Defendant employer's alleged discrimination and retaliation, Plaintiff has lost wages, seniority and out-of-pocket medical expenses and alleges he has suffered humiliation and embarrassment.

### B. Procedural History

Plaintiff brings this action under the WVHRA, in part pursuant to a Notice of a Right to Sue issued November 1, 1993 by the WVHRC. Plaintiff filed his original complaint in Wyoming County Circuit Court and the case was removed by Defendant to this Court under its diversity jurisdiction pursuant to 28 U.S.C. Section 1332.

### C. Basis for Motion for Summary Judgment

Defendant employer bases its Motion for Summary Judgment on three grounds. First, Defendant employer contends that Plaintiff's claims are time-barred by the applicable statute of limitations. Second, Defendant contends that this Court lacks subject matter jurisdiction because Plaintiff's claims are subject to mandatory

---

[9]   The Court has closely examined this report as well as another psychiatric report submitted by Plaintiff which reports no findings whatsoever of Dr. Bockner's grounds for Plaintiff's failure of Dr. Bockner's psychiatric evaluation. In light of the nature of Plaintiff's claim before the WVHRC and in this lawsuit, the Court is compelled to regard Dr. Bockner's evaluation of Plaintiff with some skepticism.

6

arbitration under the Railway Labor Act (RLA), 45 U.S.C. Section 1515 et seq.. Finally, Defendant maintains that Plaintiff cannot make out a prima facie case of racial discrimination or unlawful retaliation under the WVHRA.

## II. Applicable Law

This action was brought under the WVHRA, which is analogous to Title VII under federal law. Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-2 et seq.. The West Virginia Supreme Court of Appeals has announced that it will look to Title VII cases for guidance in WVHRA cases. West Virginia Human Rights Commission v. United Transport, 280 S.E.2d 653, 656 (W.Va. 1981).

### A. Statute of Limitations

The statute of limitations that governs an action brought under the WVHRA provides ninety days from the issuance of a Notice of Right to Sue by the WVHRC in which to file a cause of action, unless the applicable statute of limitations has not run at the end of ninety days in which case Plaintiff has until the end of the statute of limitations period to bring suit. W.Va. Code Section 5-11-13. West Virginia has a two year statute of limitations for bringing suits of this kind. McCourt v. Oneida Coal, 425 S.E.2d 602 (W.Va. 1992). The statute of limitations will be tolled if the injuries are of a "continuing" nature. West Virginia Human Rights Commission v. United Transport., 280 S.E.2d 653 (W.Va. 1981).

West Virginia Courts and the Court of Appeals for the Fourth Circuit which have addressed the issue of continuing violations have done so in contexts that are factually distinct from the one

at bar. In Institute of Technology v. W.Va.H.R. Comm'n, 383 S.E.2d 490 (W.Va. 1989) the issue was whether an ongoing compensation disparity could be considered a continuing violation. A continuing violation was found to exist as long as there was a disparity and a failure to correct such a condition. Independent Fire No. 1 v. W.Va.H.R. Comm'n, 376 S.E.2d 612 (W.Va. 1988), held that a statute of limitations begins to run upon an employee's unequivocal notice of termination from his employment. Greyhound Bus Lines East v. Geiger, 366 S.E.2d 135 (W.Va. 1988) and West Virginia Human Rights Commission v. United Transportation Union, 280 S.E.2d 653 (1981) both stand for the idea that prior discriminatory practices perpetuated by facially neutral seniority systems are continuous violations.

In the Fourth Circuit, Simmons v. South Carolina 694 F.2d 63 (4th Cir. 1982), applying United Airlines v. Evans, 431 U.S. 553 (1977), affirmed a district court's conclusion that a plaintiff's cause of action was not a continuing violation based upon the court's finding that a remedial policy effectively ended the violation. Consequently, the statute of limitations began to run at the latest date of violation because the seniority system in place at the time of the complaint did not presently violate Title VII. Jenkins v. Home Insurance, 635 F.2d 310 (4th Cir. 1986), held that a continuing wage discrepancy was a continuing violation.

The Court has also looked to the district courts in this Circuit as well as to other Circuits in interpreting a continuing violation theory of discrimination. In a similar case under

8

analogous federal law, Title VII, the United States Court of Appeals for the Second Circuit recently wrote, "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, <u>or</u> where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." <u>Cornwell v. Robinson</u>, 23 F.3d 694, 704 (2d Cir. 1994) (emphasis added) (appeal pending) (this case is most factually similar to the one at bar; in <u>Cornwell</u> the plaintiff alleged ongoing gender and racial discrimination based upon discrete events in her employment over a period of six years). The United States District Court in the Eastern District of Virginia also gave some guidance when it held that when a plaintiff alleges a "continuing course of racially discriminatory conduct" by a defendant "the discriminatory acts alleged must be specific; mere accusations of general discrimination will not suffice." <u>White v. Federal Express</u>, 729 F.Supp. 1536, 1550 (E.D.Va. 1990) (aff'd on other grounds, 939 F.2d 157 (1991)).

### B. Subject Matter Jurisdiction

Relevant case law on the issue of subject matter jurisdiction is abundant. In 1974 the Supreme Court held in <u>Alexander v. Gardner-Denver</u>, 415 U.S. 36 (1974), that under Title VII Congress intended to allow an individual alleging racial discrimination to pursue his rights under <u>both</u> Title VII and other applicable federal and state statutes. In other words, Title VII was intended as a supplement to other laws remedying employment discrimination.

9

More recently, the Supreme Court held in <u>Gilmer v.</u> <u>Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991), that a securities representative's age discrimination claim was subject to compulsory arbitration pursuant to an arbitration agreement found in a securities registration application.

Even more recently, the Supreme Court in <u>Hawaiian Airlines v.</u> <u>Norris</u>, 62 L.W. 4538 (June 6, 1994) announced that the RLA (the federal statute in question in the instant case) does not preempt a plaintiff's state law cause of action because the "minor disputes" contemplated by the RLA are only those grounded in the collective bargaining agreement. A state law cause of action is not preempted if it involves rights and obligations that exist independent of the collective bargaining agreement. As the Court said, "no proposed interpretation demonstrates a clear and manifest congressional purpose to create a regime that broadly preempts substantive protection extended by the States, independent of any negotiated labor agreement." <u>Id.</u> at 4540. The opinion goes on to find that ascertaining which rights and obligations are independent of the collective bargaining agreement is dependant on such factors as the source of the plaintiff's right, i.e. whether the right depends only on the collective bargaining agreement or depends as well upon another state or federal law right.

Finally, this Court has already held that a claim brought under the WVHRA against this same Defendant was not barred by previous arbitration under the RLA. <u>Muncy v. Norfolk and Western</u> <u>Ry. Co.</u>, 650 F.Supp. 641 (S.D.W.Va. 1986). This holding is similar

to that in <u>Alexander v. Gardner-Denver</u> which also found a statutory remedy compatible with the availability of arbitration. In <u>Bailey v. Norfolk and Western Railway</u>, 842 F.Supp. 218 (S.D.W.Va. 1994) in an age discrimination suit against, once again, this same Defendant, another court in this district held that "Congress has unequivocally intended in the field of employment discrimination to permit overlapping state [WVHRA] and federal [RLA] remedies. <u>Id.</u> Judge Faber in <u>Bailey v. Norfolk and Western Railway</u> also cited <u>Alexander v. Gardner/Denver</u> and <u>Muncy v. Norfolk and Western Railway</u> for the same purpose that we cite these cases for today; for the proposition that in passing the RLA, Congress did not intend to preempt the entire field of disputes concerning railway employees.

### C. Prima Facie Case of Discrimination/ Retaliation

To make out a prima facie case for discrimination on the basis of race under Title VII or the WVHRA[10], Plaintiff must make an initial showing of: 1) membership in a protected class; 2) adverse employment action; and that 3) but for membership in a protected class, Plaintiff would not have suffered adverse employment action. <u>Conaway v. Eastern Associated Coal Corp.</u>, 385 S.E.2d 423 (W.Va. 1986). Then the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Finally, Plaintiff is offered an opportunity to

---

[10] Defendant correctly asserts that evidentiary standards under the WVHRA are the same as those under Title VII. <u>Thomas v. Shoney's</u>, 845 F.Supp. 388, 390 (S.D.W.Va. 1994), citing <u>Helston v. Marion County Parks & Recreation Comm'n</u>, 381 S.E.2d 253, 256 (W.Va. 1989).

11

show that Defendant's proffered reasons are, in fact, pretextual. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

Similarly, a prima facie case for retaliation puts the burden on Plaintiff to prove: 1) engagement in protected activity; 2) that the employer knew of protected activity and took adverse employment action against Plaintiff; and 3) a causal relationship between the protected activity and adverse employment action. <u>See e.g.</u> <u>Brammer v. W.Va.H.R.Comm'n</u>, 394 S.E.2d 340 (W.Va. 1990). As with the evidentiary burden for a claim of racial discrimination, when an employer offers a legitimate reason for an adverse employment decision such as violation of a rule, Plaintiff must be given the opportunity to show one of two circumstances: either Plaintiff did not violate the rule or, if he did, other employees "engaged in similar acts and were not treated similarly." <u>Prince v. United Parcel Service</u>, 845 F.Supp. 835, 840 (M.D. Ala. 1993).

### III. Analysis

### A. Summary Judgment Standard

The Court begins its analysis by noting that the United States Supreme Court has held that:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a

12

sufficient showing on an essential element of her case
with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Courts must be careful, however, to insure that in assessing
a motion for summary judgment all justifiable inferences are drawn
in favor of the nonmoving party for "[c]redibility determinations,
the weighing of evidence, and the drawing of legitimate inferences
from the facts are jury functions, not those of a judge". Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, courts
"must perform a dual inquiry into the genuineness and materiality
of any purported factual issues." Ross v. Communications Satellite
Corp., 759 F.2d 355, 364 (4th Cir. 1985). "As to materiality, the
substantive law will identify which facts are material. Only
disputes over facts that might affect the outcome of the suit under
the governing law will properly preclude the entry of summary
judgment. Factual disputes that are irrelevant or unnecessary will
not be counted." Anderson, 477 U.S. at 248. While "[g]enuineness
means that the evidence must create fair doubt; wholly speculative
assertions will not suffice." Ross, 759 F.2d at 364; accord
Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir.
1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.
1987); Ash v. United Parcel Service, 800 F.2d 409, 411-12 (4th Cir.
1986).

After thoroughly reviewing the record in light of these
principles,

[t]he judge must ask himself not whether he thinks the
evidence unmistakably favors one side or the other but
whether a fair-minded jury could return a verdict for the

13

> [nonmovant] on the evidence presented.  The mere existence
> of a scintilla of evidence in support of the [nonmovant's]
> position will be insufficient; there must be evidence on
> which the jury could reasonably find for the [nonmovant].

Anderson, 477 U.S. at 252.  Where such analysis reveals the absence

of any genuine issues of material fact, the nonmoving party should

be cognizant of "the affirmative obligation of the trial judge to

prevent `factually unsupported claims and defenses' from proceeding

to trial."  Felty, 818 F.2d at 1128 (quoting Celotex Corp., 477

U.S. at 323-24).

### B. Discussion

### 1. Statute of Limitations

In addressing the statute of limitations issue, the Court has

continually kept in mind the inherent tensions between the purposes

of statutes of limitation and those embodied in the WVHRA,

guaranteeing freedom from discrimination in employment. While

statutes of limitations bar stale claims, the WVHRA was intended to

have a "broad remedial effect on work place discrimination." White

v. Federal Express, 729 F.Supp. at 1550. "Staleness and its

attendant problems are lessened where a plaintiff alleges a

continuing series of violations." Bradley v. Carydale, 707 F.Supp.

217, 221 (E.D.Va. 1989) (citations omitted). Therefore, the Court

has construed the two year statute of limitations narrowly,

according to its limited purpose, while construing broadly

Plaintiff's interest in having his claims heard on their merits.

Plaintiff's Notice of Right to Sue was issued on November 1,

1993. Plaintiff claims he filed suit in the instant matter on

January 28, 1994, within the 90 days permitted upon receipt of a

Notice of Right to Sue by the WVHRC. However, the Certified Docket Sheet from the Wyoming Circuit Court shows a filing date of February 10, 1994 which is outside of the 90 day time period allowed. Filing is complete when papers are received. <u>Clark v. Milam</u>, 152 F.R.D. 66, 69 (S.D.W.Va. 1993).

Furthermore, the injuries claimed in Count I of Plaintiff's complaint which correspond to Plaintiff's WVHRC claim must have occurred before he filed that claim on June 19, 1989. Therefore, those claims which appeared in Plaintiff's complaint that was initially filed with the WVHRC and which appear in Count I of Plaintiff's complaint must be dismissed as time-barred because they do not fall within the applicable two year statute of limitations.

However, those claims in Count I in which the injury alleged occurred on or after February 10, 1992 are not time-barred because these injuries would have occurred within the applicable two year statute of limitations for filing a complaint. These include the allegations found in paragraphs VII, VIII, IX, XI, XII, XIII[11] and concern alleged racial discrimination[12] by Defendant employer in Plaintiff's continuing medical disqualification, Plaintiff's attempts to obtain his medical records and denial of backpay and seniority for the time that he was disqualified.

───────────────

[11] Paragraph X appears to have been omitted from the complaint.

[12] Plaintiff's complaint cites W.Va. Code Section "5-11-9(a)." No such code section exists, but the Court assumes that Plaintiff intended to cite W.Va. Code Section 5-11-9(1) which declares as an unlawful discriminatory employment practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment."

In a case cited by Defendant, <u>McCourt v. Oneida Coal</u>, 425 S.E.2d 602 (W.Va. 1992), the Supreme Court of Appeals of West Virginia recalled its earlier decision in <u>Independent Fire Co. No. 1 v. W.Va.H.R. Comm'n</u>, 376 S.E.2d 612 (1988), in which the "Court ruled that the limitation period for an employee to bring an action under the WVHRA, <u>when the employee is told that he is being indefinitely suspended and then is subsequently denied reinstatement</u>, begins to run on the date when the employer <u>unequivocally</u> notifies the employee of the termination decision." <u>McCourt v. Oneida Coal</u>, 425 S.E.2d at 606 (emphasis added). In this case, Plaintiff was discharged and then told he had his job back, pending a medical examination. His disqualification for psychiatric reasons was the equivalent to being indefinitely suspended. He was never unequivocally notified of any decision but was effectively left in limbo until he obtained an independent psychiatric evaluation and was reinstated.

"'Federal Courts are also in agreement that the failure to rehire after an alleged discriminatory discharge <u>absent an independent discrete act of discrimination</u>, does not constitute a new or continuing violations of the civil rights laws.'" <u>Id.</u> at 607 quoting <u>Independent Fire Co.</u> (emphasis added) (citations omitted). Plaintiff's medical disqualification, his alleged problems getting his medical records and his denial of back pay and seniority for the time he was disqualified constitute allegations of independent, discrete acts of discrimination. In this case, these specific and related instances of discrimination were allegedly "permitted by

the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3rd at 704. Thus, Plaintiff's allegations are of discrete acts and of continuing violations of the WVHRA which toll any statute of limitations until the time that Defendant employer ceased these alleged activities. See also White v. Federal Express, 729 F.Supp. at 1550 (discriminatory acts alleged must be specific for continuing violation). These activities ceased when Plaintiff was allowed to return to work in March of 1993.

Furthermore, Plaintiff's claim of unlawful retaliation[13] for filing a claim with the WVHRC is not time-barred. Although Plaintiff was first terminated on September 25, 1991, he maintains that his troubles did not end there. The alleged discrete injury of unlawful retaliatory discharge for filing a claim with the WVHRC in September of 1991 was also a continuing one during the period in which Plaintiff was discharged, ordered returned to work by the Public Law Board in December of 1991 and then medically disqualified from service from February 26, 1992 until March of 1993. See West Virginia Human Rights Commission v. United Transport., 280 S.E.2d 653 (W.Va. 1981) (injuries of a continuing

_____

[13] Once again, Plaintiff's complaint cites a non-existent code section, W.Va. Code Section "5-11-9(i)" for "relief from the unlawful employment practices of retaliation by Defendant, due to Plaintiff's engaging in the protected activity of pursuing a race discrimination action." Plaintiff's Complaint Page 5, Paragraph II of Count II.

The Court assumes that Plaintiff is alleging violation of W.Va. Code Section 5-11-9(7)(C) which makes it an unlawful discriminatory practice for an employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he has . . . filed a complaint . . . under this article."

17

nature toll statute of limitations). Thus, the applicable two-year statute of limitations was tolled until Plaintiff was reinstated in March of 1993, when the continuing injury ended. Therefore, Count II of Plaintiff's complaint alleging unlawful discharge was timely filed.

"Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was part of that violation, even conduct that occurred outside the limitations period." Cornwell v. Robinson, 23 F.3rd 694, 704 (2d Cir. 1994). "Under such circumstances, the statute of limitations does not begin to run until the last act occurred, and if the suit is thereafter timely filed, all the earlier discriminatory acts are swept within the limitations period." White v. Federal Express, 729 F.Supp at 1550. This Court agrees with the Second Circuit and the Eastern District of Virginia and adopts their reasoning. Therefore, although those portions of Count I of Plaintiff's complaint that allege distinct instances of discrimination as addressed in Plaintiff's WVHRC claim are time-barred, Defendant's conduct during that time period can be challenged under a theory of continuing violation.

## 2. Subject Matter Jurisdiction

"Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." Hawaiian Airlines v. Norris, 62 L.W. at 4539, citing Allis-Chalmers v. Lueck, 471 U.S. 202, 208 (1985). "Congress' purpose in passing the RLA was to promote the stability of labor-management relations by

providing a comprehensive framework for resolving labor disputes." Id. The RLA establishes mandatory arbitration for two classes of cases: major disputes relating to the formation of or efforts to secure a collective bargaining agreement and minor disputes which involve controversies over the meaning of existing collective bargaining agreements. Essentially, major disputes seek to create contract rights while minor disputes enforce them. Id. (citations omitted).

In Hawaiian Airlines v. Norris the petitioner contended that the dispute over an employee's allegedly retaliatory discharge was a minor dispute. The Supreme Court disagreed. The RLA defines minor disputes as "disputes growing out of a grievance or out of the interpretation or application of collective bargaining agreements." 45 U.S.C Section 151(a). The Court found that the use of the disjunctive "grievances or . . . interpretation or application of collective bargaining agreements" in the RLA did not mean that grievances were all other employment-related disputes besides those arising from interpretation of the collective bargaining agreement, including those based on statutory or common-law.

Defendant maintains an argument like the losing argument in Hawaiian Airlines v. Norris: that resorting to Plaintiff's collective bargaining agreement is necessary to resolve his claims and thus, this Court's jurisdiction is preempted by the RLA. For this proposition, Defendant cites three aspects of Plaintiff's claim which require reference to the collective bargaining agreement; 1) the question of whether hostlers could be made to

19

perform laborer's duties; 2) the terms and conditions of Plaintiff's employment and the procedural requirements for his discharge; and 3) the imposition of a medical disqualification on Plaintiff and Plaintiff's access to his medical records.

Simply because resolution of these factual contract issues may be important in this case does not change the fact that this is clearly an employment discrimination claim, which is a state law tort, not a dispute over the terms and conditions of employment under Plaintiff's employment contract or collective bargaining agreement. While the Court recognizes the importance of labor arbitration boards, basic human rights which are guaranteed by state or federal law are more appropriately within the province of a court of law, not an arbitration board. Such boards' expertise lies in the field of interpreting labor contracts and arbitrating disputes between labor and management over the terms and conditions of employment. When a state law cause of action is charged, independent of Plaintiff's collective bargaining agreement or employment contract, an arbitration board such as that set up in the RLA is simply not qualified for the task of enforcing Plaintiff's civil rights.[14]

Whether a suit under the WVHRA or Title VII is subject to the mandatory arbitration provisions of the RLA is an issue of first

---

[14] Defendant is in error in its Reply when it states that the Hawaiian Airlines case is not applicable here. Although that case did not allege racial discrimination, it involved discrimination and retaliation for activities which were found to be matters independent of the plaintiff's collective bargaining agreement. Hawaiian Airlines v. Norris , 62 L.W. at 4358.

impression in this district since the Supreme Court's decisions in
<u>Gilmer v. Interstate/Johnson</u> and <u>Hawaiian Airlines v. Norris</u>. Since
<u>Gilmer</u>, other circuits have addressed this question. These cases
are distinguishable, and, of course, they are not precedent in this
circuit.

In a case cited by Defendant, a district court in Texas
dismissed a plaintiff's suit under Title VII based on the mandatory
arbitration required by the RLA. <u>Newton v. Southern Pacific Transp.</u>
<u>Co.</u>, 59 F.E.P. Cases 1568 (U.S.D.Ct., W.D.Tex. 1992). The approach
taken by the court in <u>Newton</u> was to distinguish relevant precedent,
<u>Gilmer</u> and <u>Alexander v. Gardner-Denver</u>, on three grounds. First,
<u>Gardner-Denver</u> involved the issue of whether arbitration of
contract-based claims precluded judicial resolution of statutory
claims. <u>Newton</u>, 59 F.E.P. at 1569-70. Second, in <u>Gardner-Denver</u> the
arbitration provision under the LMRA could only be accessed through
a union representative. <u>Id.</u> In other words, if the union
representative decided not to arbitrate the claim, the employee was
left without a remedy. Under the RLA, an employee is guaranteed a
right to file and pursue a grievance in his own right. Third,
<u>Gardner-Denver</u>, unlike <u>Gilmer</u>, did not involve an arbitration
provision under the FAA, which like the RLA, reflects a liberal
federal policy favoring arbitration agreements. <u>Id.</u>

These distinctions are not relevant to the instant case.
Defendant is not claiming that Plaintiff is precluded from bringing
this action because his case has already been arbitrated; Defendant
asserts that arbitration is Plaintiff's only remedy. Secondly,

while the RLA would permit Plaintiff to pursue arbitration without union participation, this fact does nothing for Plaintiff's desire to have his racial discrimination claim heard in court. Finally, while the RLA does indeed reflect a liberal federal policy favoring arbitration agreements, other considerations besides the broad strokes of policy must be considered. For example, some of these considerations are the source of the right being vindicated, the expertise of a court and a labor arbitration board in redressing such a right, and the legislative intent of the RLA with respect to claims like Plaintiff's. Therefore, Newton's distinctions between Gilmer and Gardner-Denver are not helpful in this case. Both Supreme Court cases are good law and both are applicable to the instant matter; Gardner-Denver standing for the proposition that Title VII was designed to supplement, not supplant, existing institutions that could be forums for addressing racial discrimination, and Gilmer standing for the proposition that statutory claims may, in some circumstances, be the subject of an arbitration agreement. Gilmer does not preclude a finding that a statutory claim may not be the proper subject of an arbitration agreement.

In another case cited by Defendant, Hirras v. National R.R. Passenger Corp., 10 F.3d 1142 (5th Cir. 1994), the Fifth Circuit held that "the interest of the RLA and Title VII are best served by requiring Hirras to arbitrate her Title VII claim under the procedures established by the RLA." Id. at 1146-47. In Hirras, the court found that state law claims that grow out of the employment

relationship can be "minor disputes" even if those claims do not arise directly from the collective bargaining agreement. Id. Once again, this case has no precedential effect on this Court. Furthermore, one week after the Hawaiian Airlines opinion appeared in U.S. Law Week, the Fifth Circuit vacated its judgment in Hirras. Hirras v. National R.R. Passenger Corp., 62 L.W. 3854. It remains to be seen what position the Fifth Circuit will take with respect to this issue in light of Hawaiian Airlines.

One thing is certain, this is not a major dispute arising around the creation of a contractual right within the meaning of a major dispute under the relevant caselaw. The question here, as in Hirras and Hawaiian Airlines, is whether this is a "minor dispute" under the RLA. The answer to this question is factually dependent.

As for the source of Plaintiff's right, it comes not from his employment contract or collective bargaining agreement but from the state and federal constitutions. Plaintiff's claim is that he was deprived of his civil rights. West Virginia Code Section 5-11-9(1) gives him a remedy of bringing suit under the WVHRA by making it an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment if the individual is able and competent to perform the services required."

Plaintiff and Defendant dispute that Plaintiff was able and psychologically competent to perform his job. They dispute whether Defendant employer discriminated against him on the basis of his race and in retaliation for having filed a claim with the WVHRC or

23

whether Defendant had legitimate non-discriminatory reasons for its actions. While these questions may involve certain aspects of Plaintiff's contract, they are primarily concerned with conduct, intent and circumstantial evidence of discrimination.

The problem of racial discrimination is societal. It is unfortunately not found exclusively in the province of employment relations. The WVHRA prohibits discrimination not only in employment but in access to public accommodations and to housing. Thus, it appears to this Court that it was the legislative intent of the WVHRA to prevent discrimination wherever it may occur. It appears it was decidedly not the intent of the West Virginia legislature to deprive an individual of these remedies simply because that person also happens to be an employee subject to a collective bargaining agreement which provides for mandatory arbitration of any claim arising out of the employment relationship.

Allegations of discrimination in employment will always depend to some degree factually on the terms and conditions of the employment contract, but discrimination does not arise out of the employment relationship just because that is where it happens to rear its ugly head.   Therefore, this claim is not a minor contractual dispute, which would be governed by the Railway Labor Act's (RLA's) mandatory arbitration provision, but a civil rights dispute sounding in tort which is independent of the employment contract. RLA arbitration does not preempt Plaintiff's suit and this Court has subject matter jurisdiction to hear this case.

24

Hawaiian Airlines v. Norris, 62 L.W. 4537 (1994).

### 3. Prima Facie Case of Discrimination/ Retaliation

As Plaintiff points out, intent to discriminate is very difficult to ascertain on direct evidence and courts have held that in opposition to a motion for summary judgment, Plaintiff need not do more than offer proof which casts some reasonable doubt upon Defendant employer's proffered reasons for its adverse employment action. The Court believes that Plaintiff could meet the requirements for a prima facie case of discrimination for discrete instances of discrimination on the basis of race as alleged in that Count I, if those portions were not time barred. Taking his allegations as true, Plaintiff is a member of a protected class; he is African-American. He was required to endure a racially hostile work environment with a racially hostile sign and a history of racially segregated facilities. As a hostler, Plaintiff was required to perform the duties of a laborer while another hostler was not so required and while laborers sat idly by. Plaintiff complained about his work assignments and about the racially hostile sign. Ultimately, Plaintiff was discharged over what amounts to a misunderstanding after 19 years of good service. He was ordered returned to work by an independent body but was kept out of work on a medical discharge and diagnosed with a psychiatric disorder solely because he believed he had been discriminated against.

But for Plaintiff's status as a member of the protected class, Plaintiff argues that his working environment would not have been

hostile to him and the decision to discharge him would not have been made. Defendant asserts that Plaintiff was discharged for insubordination and was kept out on a medical discharge because of his psychiatric condition. Plaintiff offers proof that these reasons were pretextual, by offering evidence that Plaintiff had no psychiatric condition and that his alleged insubordination would not have caused similarly situated employees to be discharged.

Even with those portions of Count I which recount the discrete instances of discrimination from Plaintiff's WVHRC claim time-barred, Plaintiff may challenge the conduct that occurred during the time period addressed in his WVHRA claim under a continuing violation theory. Under such a theory, Plaintiff has the burden of showing specific practices and instances of discrimination were permitted by Defendant employer to continue so as to amount to a policy of discrimination by the employer. It is in this context that Defendant employer's conduct, including a policy of racial segregation, maintaining a racially hostile sign and Mr. Clemson's requirement that Plaintiff perform laborer duties while another white hostler was not so required, raises a reasonable doubt as to the veracity of Defendant employer's proffered reasons for its actions concerning Plaintiff's discharge and subsequent medical disqualification from returning to work.   While others in Plaintiff's position may have been required to undergo a psychiatric evaluation, there was never any evidence, other than Defendant's own doctor's report, that Plaintiff had a psychiatric disorder, either at the time of his discharge or when he was

26

reinstated. Furthermore, Plaintiff argues he was not out of work before being reinstated for the time period necessary to trigger a mandatory medical examination. If proven true, this fact would tend to show that Defendant's requirement that he undergo a medical evaluation was a pretext for discrimination.

On Count II, the requirements that Plaintiff must meet are those of retaliatory discharge under the WVHRA. The Court finds that Plaintiff has offered sufficient evidence that: 1) he engaged in the protective activity of filing a claim with the WVHRC; 2) Defendant employer knew Plaintiff had engaged in the protected activity of filing a claim; and 3) there is circumstantial evidence of a causal connection between Plaintiff's filing a claim of discrimination and the adverse employment action taken. Specifically, evidence of the causal connection is the fact that Plaintiff filed a complaint based on discrimination of a continuing nature and Plaintiff's discharge was not proportional to his alleged insubordination in the one instance in question. Further evidence of a causal connection is that the sole basis for the psychiatric diagnosis which kept Plaintiff out of work after he was ordered reinstated was, in essence, that he continued to claim he was discriminated against.

Plaintiff has raised reasonable doubts about Defendant employer's proffered reasons for taking adverse action with respect to Plaintiff. He has done so with the affidavit of a doctor who found Plaintiff had no psychiatric disorder and through the decision of the Public Law Board which found that Plaintiff's

27

nineteen years of good service did not warrant his discharge solely because of the September, 1991 incident of alleged insubordination.

## IV. Conclusion

Accordingly, for the foregoing reasons, with respect to Defendant's first claim, there is no genuine issue of material fact that certain discrete portions of Plaintiff's complaint are time-barred.   Therefore, Defendant's Motion for Summary Judgment is **GRANTED IN PART**.  Those portions of Plaintiff's complaint which relate to the specific instances of discrimination which Plaintiff raised before the WVHRC were not timely filed and are **DISMISSED**. However, on a theory that Defendant committed a continuing violation of the WVHRA by engaging in specific and related instances of discrimination and permitting those instances to go unremedied for so long as to amount to a discriminatory policy or practice, those same instances of discriminatory conduct raised first by Plaintiff before the WVHRC are properly challenged under the portion of Plaintiff's complaint which is not time-barred.

On Defendant's second basis for summary judgment, as a matter of law this Court has subject matter jurisdiction over this civil rights litigation. This is not a "minor dispute" of the type intended to be governed by the RLA, but rather it is a dispute concerning rights independent of Plaintiff's employment contract, namely his state law rights to be free from racial discrimination and retaliation in his employment. Therefore, with respect to Defendant's second claim, Defendant's Motion for Summary Judgment is **DENIED**.

28

Defendant's third basis for Summary Judgment questions whether Plaintiff can make out a prima facie case of employment discrimination on the basis of race and in retaliation for Plaintiff's filing a complaint of racial discrimination under the West Virginia Human Rights Act. Plaintiff clearly is a member of a protected class and he engaged in a protected activity (filed a complaint). He was clearly the recipient of an adverse employment decision (was discharged from his job of nineteen years after an arguably minor misunderstanding and was kept from returning for arguably groundless psychiatric reasons). Plaintiff has offered evidence of a racially hostile environment and disparate treatment which are likely due to racially discriminatory reasons. As for a causal connection between Plaintiff's filing a complaint and the adverse action, Plaintiff has demonstrated that he was discharged _after_ he filed his claim with WVHRC, that Mr. Clemson and Mr. Salango, Plaintiff's supervisors, _knew_ of his WVHRA claim, _knew_ of his complaints that he was required to perform laborer duties, _knew_ that he had complained about the racially hostile sign and that all medical personnel agreed that Plaintiff had no psychiatric disorder besides his belief he was being discriminated against on the basis of race which, coincidentally, was diagnosed only by Defendant's physician. Since the substance of his diagnosis was in fact his engaging in a protected activity and the exercise of his constitutional rights, this "diagnosis" is certainly to be viewed with skepticism.

The Court finds that genuine issues of material fact exist

29

with respect to whether Plaintiff can make out a prima facie case of discrimination and retaliatory discharge. A reasonable jury could find by a preponderance of the evidence that Plaintiff was discharged because he filed a claim with the WVHRC and because he worked in a racially hostile atmosphere in which supervisors engaged in unlawful retaliation. Therefore, with respect to Defendant's third claim, Defendant's Motion for Summary Judgment is **DENIED.**

The Clerk is directed to mail a copy of this order to all counsel of record.

IT IS SO ORDERED this ___18th___ day of November, 1994.

ENTER:

Elizabeth V. Hallanan
United States District Judge